UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


<u>Salform Inc.</u>

    v.                                        Civil No. 19-cv-796-LM
                                                 Opinion No. 2020 DNH 132
<u>Anvil International, LLC</u>


## O R D E R

Plaintiff Salform Inc. ("Salform") brings this action against defendant Anvil International, LLC ("Anvil"), alleging Anvil's failure to make payments due under its contract with Salform's predecessor in interest.  Salform asserts Anvil's liability for breach of contract and for unjust enrichment. Alleging Salform's failure to perform its obligations under the contract, Anvil asserts counterclaims under New Hampshire common law for breach of warranty, indemnity, and misrepresentation, and under New Hampshire's Consumer Protection Act for deceptive trade practices.

Four motions are now before the court.  First, Anvil moves for judgment on the pleadings as to Salform's claims against it, on the sole ground that Salform is not the real plaintiff in interest.  Doc. no. 17.  Second, Salform moves for leave to amend its complaint to add two new causes of action.  Doc. no. 18.  Third, Anvil moves for leave to file a third-party

complaint against Salform's principal.  Doc. no. 27.  Fourth and finally, Anvil moves to strike Salform's surreply (doc. no. 26) in support of its opposition to Anvil's motion for judgment on the pleadings.  Doc. no. 28.

## BACKGROUND[1]

Plaintiff Salform is a Connecticut corporation with its principal place of business in Connecticut.  Salform alleges that it is "the successor to . . . Salamon Industries," an unincorporated business entity owned and operated by Andrew Salamon ("Salamon").  Doc. no. 1, ¶ 6.  Like Salform, Salamon Industries maintained its principal place of business in Connecticut.  At all material times, Salform and/or Salamon Industries were in the business of selling machine tools for metal forming and metal working.

Defendant Anvil is a Delaware corporation with its principal place of business in New Hampshire.  Anvil is the corporate parent of Beck Manufacturing ("Beck"), a Pennsylvania corporation which operates a manufacturing plant in Waynesboro, Pennsylvania.

---

[1] Except as otherwise noted, the recitation that follows is the court's summary of the parties's allegations construed in the light most favorable to Salform, in accordance with the legal standard governing motions for judgment on the pleadings, discussed infra.

In September 2017, acting on behalf of Salamon Industries, Salamon visited Beck's Waynesboro plant for the purpose of negotiating an agreement.  Salamon proposed either to sell a new metal tapping machine to Beck or to retrofit a tapping machine that Beck already owned, to permit automation of its functions.

Following initial negotiations, Salamon sent Beck two alternative proposals, one for a proposed sale transaction and one for a proposed retrofitting transaction.  Under the sale proposal, Salamon Industries would sell Beck a new metal tapping machine for a purchase price of $298,000.  Under the retrofitting proposal, Salamon Industries would sell Beck an 8-station indexing table and a pneumatic feeder for $168,134, and would install those parts on Beck's existing machine to automate Beck's metal tapping process for an additional $124,000 (or a total price of $292,134).  Salamon advised Beck that it would be more prudent to purchase a new machine than to retrofit an existing machine.

In February 2018, Beck offered to purchase the indexing table and the pneumatic feeder, without any installation or retrofitting.  Following further negotiations, Salamon offered to provide technical and installation support to assist Beck in retrofitting its machine for an additional $15,000.  On February 19, 2018, Anvil (as Beck's corporate parent) sent Salamon Industries a purchase order (the "Purchase Order") for the

3

indexing table and pneumatic feeder (for $168,134), as well as technical and installation support (for an estimated $15,000).

The second page of the Purchase Order contained a lengthy recital, in fine print, of terms and conditions.  Among its stated terms and conditions, the Purchase Order contained a provision (the "anti-assignment provision") prohibiting the "Seller" from assigning or transferring rights under the Purchase Order "without written consent of Buyer."  Doc. No. 1-3 at 2.  The Purchase Order further provided that it would be "governed by and construed in accordance with the laws of the State of New Hampshire (without giving effect to conflict of law principles)."  Id.  It additionally contained a forum selection provision specifying the United States District Court for the District of New Hampshire for resolution of disputes between the contracting parties.  Id.[2]

Salamon Industries sent Beck a formal written acknowledgment of the Purchase Order (the "Acknowledgment"). The Acknowledgment expressly stated that Salamon Industries would provide the goods and services specified in the Purchase Order by July 9, 2018.  Although the parties dispute whether Salamon Industries agreed to be bound to the terms and

---

[2]  In final relevant part, the Purchase Order contained a warranty provision and an indemnity provision, the alleged breach of which forms the basis of two of Anvil's counterclaims.

conditions set forth in Anvil's Purchase Order, they do appear
to agree that the forms exchanged in February 2018 (or a subset
of them) memorialized a contract (the "February 2018 agreement")
for the provision of goods and services by Salamon Industries to
Beck.  Salamon Industries thereafter invoiced Beck for $91,567,
or 50% of the total price referenced in the Purchase Order.
Anvil paid the invoiced amount.

Salform alleges that, in or around late spring or early
summer of 2018, it "was incorporated" as Salform, Inc.  Doc. no.
1, ¶ 20.  It is unclear from the parties' allegations at what
time Anvil or Beck became aware of Salform's incorporation or of
the distinction between Salform and Salamon Industries.  No
party alleges that Anvil or Beck at any time objected to
Salform's performance of Salamon Industries's contractual
obligations.

In August 2018, employees of Salform made a site visit to
Beck's Waynesboro facility to provide the technical and
installation support that Salamon Industries had promised.  In
the course of their visit, Salform's employees determined that
Beck's existing metal tapping machine had been modified from its
original condition in such a way as to make it unsuitable for
the contemplated retrofitting.  Salform advised Beck that due to
these modifications, significant unanticipated additional labor
would need to be performed on Beck's machine before the

retrofitting could be accomplished.  Salform further advised
Beck that, even after that additional labor was performed, it
would not be possible to automate the machine's processes fully.
Beck agreed to permit Salform to perform the additional work and
shipped the machine to Salform's Connecticut headquarters for
that purpose.

After Beck shipped its machine to Salform's facility,
Salform repeatedly missed deadlines for completion of the
contemplated work.  Ultimately, however, Salform modified Beck's
machine to permit installation of the indexing table and
pneumatic feeder.  Salform also performed additional repairs to
the machine that were unrelated to the contemplated retrofitting
but were necessary to permit the machine to operate
appropriately.  The value of the unanticipated work performed on
Beck's machine, including the repair work, was $20,000.[3]  Salform
completed the work in December 2018, and returned the machine to
Beck.

Beck completed the retrofitting in January 2019 by
installing the indexing table and pneumatic feeder.  The
installation did not result in full automation of the machine's

---

[3]  Anvil's failure to compensate Salform for this
unanticipated work (noted below) is the subject of Salform's
unjust enrichment claim.

processes.  Beck incurred significant costs in further
unsuccessful efforts to fully automate its machine.

Anvil has not paid either the $91,567 still due and owing
under the February 2018 agreement or the $20,000 for the
additional work performed on Beck's machine.  Salform alleges
breach of contract in the amount of $91,567 and unjust
enrichment in the amount of $20,000.  Anvil alleges breach of
warranty, indemnity, misrepresentation, and deceptive trade
practices, and seeks economic damages in an unspecified amount.

## DISCUSSION

I.   Anvil's Motion for Judgment on the Pleadings

Anvil argues that it is entitled to judgment on Salform's
claims on the face of the pleadings because, as a matter of law,
Salform is not the real party in interest.  See Fed. R. Civ. P.
17 ("[a]n action must be prosecuted in the name of the real
party in interest").  Anvil asserts that Salform cannot prevail
on its claims because it has pled neither that it was an
original party to the contract with Anvil nor that Salamon
Industries effectively assigned its rights and obligations under
the February 2018 agreement to it.  Anvil further argues that,
even if Salform had pled such assignment, the assignment would
be void as a matter of law pursuant to the anti-assignment
provision of the Purchase Order.  In response, Salform argues

that it is ascertainable on the face of the pleadings that it is the real plaintiff in interest.[4]


A.    Legal Standard

Motions for judgment on the pleadings are governed by Federal Rule of Civil Procedure 12(c).  Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law.  See Beal v. Missouri Pac. R. R. Corp., 312 U.S. 45, 51 (1941).  In evaluating a motion for judgment on the pleadings, the court views the facts presented in the pleadings, and all reasonable inferences therefrom, in the light most favorable to the party opposing the motion.  See Najas Realty, LLC v. Seekonk Water Dist., 821 F.3d 134, 140 (1st Cir. 2016); Feliciano v. State of R.I., 160 F.3d 780, 788 (1st Cir. 1998).  Moreover, all of the allegations of the non-moving party are credited as true,

---

[4]  As noted, Anvil argues that the parties' dispute is governed by New Hampshire law, whereas Salform seeks application of Connecticut law.  The court need not resolve the conflict for purposes of this order, however, because as the analysis below establishes, the same result would obtain under the law of either jurisdiction.

whereas those allegations of the moving party which have been
denied are deemed false.  See Villeneuve v. Avon Prod., Inc.,
919 F.3d 40, 49 (1st Cir. 2019).  In effect, the standard for
resolving a motion for judgment on the pleadings under Rule
12(c) is identical to that applicable to a motion to dismiss
brought under Federal Civil Procedure Rule 12(b)(6), except that
a Rule 12(c) motion implicates the allegations of all of the
pleadings rather than those of the complaint alone.  See Aponte-
Torres v. Univ. Of Puerto Rico, 445 F.3d 50, 55 (1st Cir. 2006).

Pursuant to Federal Civil Procedure Rule 12(d), "[i]f . . .
matters outside the pleadings are presented to and not excluded
by the court," the court must convert a Rule 12(c) motion to one
for summary judgment under Federal Civil Procedure Rule 56.[5]
Fed. R. Civ. P. 12(d); see also Feliciano, 160 F.3d at 788.
Under that circumstance, the court must grant all parties
adequate opportunity to conduct discovery and to present
material evidence.  See id.

---

[5]  Here, Salform offers evidence in support of its objection
to Anvil's motion, namely Salamon's declaration.  The
declaration is attached as an exhibit to Salform's surreply
(doc. no. 26); the surreply and attached declaration are the
subject of Anvil's motion to strike.  The court finds that it
can resolve the motion for judgment on the pleadings without
need to consider Salform's proffered evidence, and therefore
excludes it.  Anvil's motion to strike the surreply and attached
exhibit is accordingly denied as moot.

B.   <u>Analysis</u>

The parties are in agreement that Salform was not an
original party to the February 2018 agreement.  However, it does
not follow that Salform can only sue for breach in its own name
if it is Salamon's assignee.  In fact, Salform's theory is not
that it is Salamon's <u>assignee</u> but rather that it is the
<u>successor</u> <u>in</u> <u>interest</u> to Salamon Industries' rights under the
agreement.

Succession and assignment are not synonymous.  A corporate
successor in interest takes the place of its predecessor by
operation of law, thereby becoming invested with the
predecessor's rights and assuming the predecessor's burdens.
<u>See</u> 15 Fletcher Cyc. Corp. ("Successors" and "succession")
§ 7203; <u>see</u> <u>also</u> <u>id.</u> at n 1, n 3.  Assignment, by contrast, is a
contractual agreement between two parties whereby one party
voluntarily transfers all or some of its rights and/or
obligations to the other in exchange for consideration.  <u>See</u> 6A
C.J.S. (Assignments) § 1.  Because succession and assignment are
distinct concepts, a provision prohibiting assignment will not
operate to prevent succession, which occurs independently of any
assignment agreement.[6]  <u>See</u>, <u>e.g.</u>, <u>Pratte v. Balatsos</u>, 99 N.H.

---

[6]  Any contrary holding would necessarily invite mischief.
If an anti-assignment provision could bar succession, then a
party to a contract containing such a provision could escape its

430, 434-435 (1955) (as a matter of New Hampshire law, a successor in interest is bound by its predecessor's contracts in the absence of assignment); In re Bachand, 306 Conn. 37, 55 (2012) (as a matter of Connecticut law, succession occurs by operation of law, without regard to "the act or cooperation" of the predecessor or successor). Accordingly, it is commonplace for corporate successors to bring actions in their own name to enforce the contracts of their predecessors, including in the absence of any assignment agreement. See, e.g., EnergyNorth Nat. Gas, Inc. v. Certain Underwriters at Lloyd's, 156 N.H. 333, 335 (2007) (applying New Hampshire law); Celentano v. Oaks Condo. Ass'n, 265 Conn. 579, 582, 582 n. 2 (2003) (applying Connecticut law).

To survive Anvil's motion, Salform must adequately allege that it is the successor in interest of Salamon Industries. In determining whether Salform's allegations are adequate, the court looks to the law of the state of Salform's incorporation. See, e.g., Chi. Title & Tr. Co. v. 4136 Wilcox Bldg. Corp., 302 U.S. 120, 124-125 (1937) (questions of corporate status are governed by the law of the state in which the entity was

---

obligations by the simple expedient of reincorporating under a new name.

incorporated).  Salform was incorporated in Connecticut; thus Connecticut law governs this question.

As a matter of Connecticut law, when a previously unincorporated business entity (such as Salamon Industries) incorporates, and thereafter carries on the operations of the former unincorporated entity, the new corporation is treated as the successor to the unincorporated business.  See, e.g., Canton Motorcar Works, Inc. v. DiMartino, 6 Conn. App. 447, 452-455 (1986); D.D.J. Elec. Contractors, Inc. v. Nanfito & Sons Builders, Inc., 40 Conn. Supp. 50, 52 (1984).  As a matter of law, the successor corporation may sue in its own name on a contract entered into by the unincorporated predecessor.  Id.

Here, Salform alleges that it is "the successor" to Salamon Industries, the unincorporated business entity that originally contracted with Anvil.  Doc. no. 1, ¶ 6.  Salform alleges that after it "was incorporated" as Salform Inc., its employees continued carrying out Salamon Industries's obligations under the February 2018 agreement.  Id., ¶ 20.  Read in the light most favorable to Salform, these allegations are adequate to support the conclusion that Salform is Salamon Industries's successor in interest and, therefore, the real plaintiff in interest.

For these reasons, Anvil's motion for judgment on the pleadings is denied.

II.  <u>Salform's Motion for Leave to Amend</u>

Salform seeks leave to amend its complaint to state a
second claim for breach of contract and a claim under
Connecticut's Unfair Trade Practices Act for deceptive trade
practices.  Anvil objects to Salform's motion on futility
grounds.  Specifically, Anvil argues that amendment would be
futile as to both claims because Salform is not the real
plaintiff in interest, and futile as to the deceptive trade
practices claim because the parties agreed that any dispute
arising out of their contract would be governed by New Hampshire
law.

Anvil's argument that Salform is not the real party in
interest is unavailing for the reasons stated above.  And its
remaining argument—that the proposed statutory claim would not
lie because New Hampshire law governs—is premature.  At this
early stage of these proceedings, and in the absence of a
developed evidentiary record, the court cannot find as a matter
of law that Salamon Industries agreed to be bound by the terms
and conditions of Anvil's Purchase Order, or that the parties's
dispute is otherwise necessarily governed by New Hampshire law.

For these reasons, Salform's motion to amend its pleading
is granted.  Anvil may raise its choice-of-law arguments again,
with supporting evidence, at a later stage of these proceedings.

III. <u>Anvil's Constructive Motion for Joinder</u>

Anvil seeks leave under Federal Rule of Civil Procedure 14(a) to file a third-party complaint against Salamon containing the identical claims it has already asserted as counterclaims against Salform.  Anvil's motion is premised on the same theory as its motion for judgment on the pleadings, namely that it entered the February 2018 agreement with Salamon (doing business as Salamon Industries), and that Salamon lacked authority to assign his rights and obligations under that agreement to Salform.  Therefore, Anvil argues, its claims lie against Salamon rather than against Salform.

Anvil has chosen the wrong procedural mechanism for what it hopes to accomplish.  Rule 14(a) provides that "[a] defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action <u>who is or may be liable to [it] for all or part of the plaintiff's claim</u> against [it]."  Fed. R. Civ. P. 14(a) (emphasis supplied).  That is, Rule 14(a) governs impleader, whereby a defending party may implead a non-party who may be jointly or severally liable to it on the claims against the party.  <u>See</u> Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 368 n. 3 (1978); <u>see</u> <u>also</u> Metro. Life Ins. Co. v. Ditmore, 729 F.2d 1, 9 (1st Cir. 1984).  Here, Anvil seeks to bring its own independent claims against Salamon, not to assert that, if

it were found liable on Salform's claims, Salamon would in turn
be liable to it on those same claims.

The procedural mechanism appropriate to the outcome Anvil
seeks is joinder.  Specifically—because Salamon is not a
"required party" who claims an interest in the action or whose
absence would otherwise prevent the court from according
complete relief, see Fed. R. Civ. P. 19(a)(1)—the appropriate
mechanism is permissive joinder of a defendant pursuant to
Federal Civil Rule of Civil Procedure 20(a)(2).  The court
therefore construes Anvil's motion as a Rule 20(a)(2) motion for
permissive joinder.[7]


A.   Legal Standard

Rule 20(a)(2) provides that defendants may permissively be
joined if:

    (A)  any right to relief is asserted against them
         jointly, severally, or in the alternative with
         respect to or arising out of the same
         transaction, occurrence, or series of
         transactions or occurrences; and

    (B)  any question of law or fact common to all
         defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2).

---

[7]  In its reply memorandum, Anvil requests—without analysis
of the elements of Rule 20—that its motion be construed
alternatively as a motion for joinder.

B.   Analysis

Both elements required under Rule 20(a)(2) are clearly
present here.  Anvil intends to state precisely the same set of
claims against both Salform and Salamon, arising out of
precisely the same set of circumstances.  Anvil's theory is that
its claims lie against Salamon as the originally contracting
party, but in the alternative, in the event Salform succeeded to
Salamon Industries's obligations under the February 2018
agreement, that they lie against Salform as successor in
interest to Salamon's unincorporated business entity.  Anvil
thus seeks to assert alternative claims arising out of the same
facts and governed by the same law against the two potential
defendants.  Joinder is therefore appropriate under Rule
20(a)(2).  See, e.g., Arista Records LLC v. Does 1-27, 584 F.
Supp. 2d 240, 251 (D. Me. 2008).

Salform argues that it would nevertheless be futile to
permit Anvil to plead claims against Salamon, because Salamon's
obligations to Anvil were extinguished when Salform succeeded to
Salamon Industries's rights and obligations under the February
2018 agreement.  Salform further argues that claims against
Salamon are necessarily futile because this court lacks personal
jurisdiction over him.  The court disagrees.

First, the court's disposition of Anvil's motion for
judgment on the pleadings was made solely on the basis of the

parties's allegations, construed in the light most favorable to
Salform.  The court has made no factual findings in this case,
including as to Salform's status as successor in interest to
Salamon Industries.  The possibility has not been foreclosed
that Anvil could establish through evidence that Salamon was at
material times a party to the February 2018 agreement.  In
short, Anvil's proposed claims against Salamon are not futile.

Second, it is not apparent on the face of Anvil's
allegations that this court would lack personal jurisdiction
over Salamon.  Anvil has pled that Salamon agreed to the New
Hampshire forum selection provision contained in the Purchase
Order.  It is well established that consent to a forum selection
clause constitutes waiver of the right to challenge personal
jurisdiction in the selected forum.  See, e.g., The Bremen v.
Zapata Off-Shore Co., 407 U.S. 1, 10-12 (1972).  Thus, if the
truth of Anvil's allegations were established, this court would
likely have personal jurisdiction over Salamon.

For these reasons, Anvil's constructive motion for joinder
is granted.  In the event Salamon wishes to contest personal
jurisdiction in this forum he may do so through either a motion
to dismiss under Federal Rule of Civil Procedure 12(b)(2) or a
motion for summary judgment.

## CONCLUSION

For the reasons discussed above, Anvil's motion for judgment on the pleadings (doc. no. 17) is denied; Salform's motion for leave to amend its complaint (doc. no. 18) and Anvil's constructive motion for joinder (doc. no. 27) are granted; and Anvil's motion to strike (doc. no. 28) is denied as moot.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

July 28, 2020

cc:  Counsel of Record